Harper, J.
The three first grounds of the motion may be considered together. The principles of the Chancellor’s decision, are perhaps less distinctly seen, because the defendant’s, Allston and Hodges, sustain the characters both of senior execution creditors and junior mortgage creditors of the deceased, John B. Pressley. If the execution creditors were different persons, and were now seeking* to enforce their execu- r^ooA tions against the slaves now in question, the plaintiff would have a ■- 4 clear equity to restrain them, and to compel them to resort to the property mortgaged to defendants. This is on the principle expressed in the case of Fowler & Addison v. Barksdale, State Rep. Eq. 164, “that when a preferred creditor has a lien on two funds, and another creditor has a junior lien on one of them, the creditor who has the preference shall resort to that which will operate the least injuriously to the other creditor.” And if the executions, being restrained as to the slaves, had been enforced against the property mortgaged to the defendants, the latter would have had no redress or claim of contribution against the plaintiff. The principle is fully explained by Chancellor Kent, in Gill v. Lyon, 1 John. Ch. Rep. 447, and Clowes v. Dickenson, 5 John. Ch. Rep. 235. When the intestate mortgaged (that is, conditionally sold) the slaves to plaintiff, his execution creditors *250 were bound on equitable principles to exhaust the property which remained in his hands, before pursuing that to which plaintiff had acquired a title. Among this property, was the land and mill and house and lot in question. When the intestate afterwards conveyed these to defendants, he could only convey them, subject to the equitable burden to which they were liable in his own hands. In the language of Chancellor Kent, “ they sit in the seat of their grantor.” The burden is, that the property must be liable to the execution creditors in preference to that conveyed to plaintiff.
Then, if plaintiff had neglected to restrain the execution creditors, and had lain by and permitted the property to be sold, and then filed his bill against defendants to be reimbursed out of the property conveyed to them, could that bill be sustained ? I see no reason why it should not; provided no particular injury were occasioned to defendants by the delay. This is part of the matter decided in Clowes v. Dickinson. And this will dispose of the third ground, relative to the proceeds of the slave, Betty There were executions older than the plaintiff’s mortgage, to exhaust the whole personal property. That defendants were the owners of the Harris execution, was merely an accidental circumstance. If they had not been, and the whole of the money had been paid to third persons, their liability would have been the same. In Clowes v. Dickinson, the bill was in like manner filed to be reimbursed after the property first purchased had been sold. In that case, too, it happened that the second purchasers of pro%qok-i perty *had purchased the older execution. In that case, as is -* alleged in this, the property (two lots of land) sold under execution was purchased at a very low price ; and it was contended for the plaintiff, that if he were not entitled to have the lots themselves, he ought to have an inquiry as to their actual value at the time of the sale. But as he had been guilty of great laches, having lain by for several years, and the purchasers had in the mean time made much improvements on the lots, which would have rendered it inequitable that they should be taken from them, the Chancellor would only allow him the amount for which the property actually sold. This is what the Chancellor has done in the present case; though I do not know that laches can be imputed to the plaintiff. What has been said, disposes of the fourth ground, and also of the sixth. With respect to the latter, it is enough to say that defendants have been satisfied their execution. It is immaterial to them whether this has been done by the proceeds of the particular slave, Betty, or other personal property of the intestate. To whatever executions these may have been applied, the property in defendants’ hands is liable to make them good. The third, fourth and sixth grounds are all misconceived.
The fifth ground is that which seems principally to be relied on. It is supposed to come within the principle of the case of Smith v. Henry, 1 Hill, 16, that where a conveyance is made by an insolvent person in payment of a previously existing debt, and the grantor is allowed to retain possession of the property, this is conclusive evidence of fraud. Or, at all events, that the intestates having been permitted to retain possession after condition broken, was a badge of fraud, which has not been explained, and which must vitiate the conveyance. It is argued that there is no difference in principle between a conveyance by way of mortgage *251 and an absolute conveyance. . The principal English cases relied on are those of Edwards v. Harben, 1 T. R. 587; Ryall v. Rolle, 1 Atk. 165, and Worsely v. De Mattos, 1 Burr. 467. The two latter were cases of express mortgages, and, it is said, decided that possession’s being retained by the mortgagor, whether before or after condition broken, is of itself conclusive of fraud. But these elaborately considered cases were determined with reference to the English statutes of bankruptcy, and particularly the 21 Jac. 1, c. 19, which reciting “ For that it often falls out that many persons, before they become bankrupts, do convey their goods to other *men upon good consideration, yet still do keep the same, r*Q9fi and are reputed the owners thereof, and dispose the same as their L á ” own,” enacts, “ that if at any time hereafter, any person or persons shall become bankrupt, and at such times as they shall so become bankrupt, shall, by consent and permission of the true owner and proprietary, have in their possession, order or disposition, any goods or chattels whereof they shall be reputed owners, or take upon them the sale, alteration or disposition as owners, that in every such case, the said commissioners shall have power to sell and dispose the same, as fully as any other part of the bankrupt’s estate. ” The cases determined that a mortgage is a conditional sale and transfers the property to the mortgagee, who is therefore the true owner and proprietary, and if by his consent it be left in the mortgagor’s possession, it comes within the terms of the act, whether the possession be before or after condition broken. But I acknowledge that the subjects is fully considered with reference to the common law, and the stat. 13 Eliz. and the opinion of the Court expressed, that there is no difference between a mortgage and an absolute conveyance. But it is not, as under the bankrupt law, that the retaining of possession of itself avoids the transaction, or is conclusive evidence of fraud. It is one of the circumstances which is to be taken with all the other circumstances, to make up a judgment on the fraudulent or bona fide character of the transaction. After reviewing the cases on the subject, it is said in Ryall v. Rolle, “From all these cases, it appears, that upon the construction of the stat. 13 Eliz. there is no room to make a distinction between conditional and absolute sales of goods, if made to defraud creditors, but a Court or jury are left to consider of this from the circumstances of the case.” I have before ventured to express the opinion, that the true ground of decision in Twine’s case was lost sight of in succeeding cases, and the distinction overlooked between the cases in which the retaining of possession is conclusive evidence, or only one of the badges of fraud.
I have not found any decision of the English Courts or our own, inconsistent with the cases of Ryall v. Rolle and Worsely v. De Mattos, on the point we are considering. And I concur, that there is no distinction in principle between an absolute conveyance and a mortgage or conditional conveyance. There will be a great difference, however, in the application of the principle, according to the circumstances of the different eases. If, according *to the distinction in Smith v. Henry, there were a r^ooir previous debt due and payable at the time, and the mortgage was L executed to secure that, the mortgagor remaining in possession, it would come completely within the reasoning of that case. No other motive could well be imagined for such a transaction, than that a mortgagor’s being permitted to retain possession of the goods, was the price paid by • *252 the creditor for the preference given to him. Such precisely is the case of Edwards v. Harben. Though called a bill of sale, that was in effect a mortgage. It was intended as a security. It was for a debt already due, and it was stipulated that the vendee should not take possession for fourteen days. It was in this case that the retaining of possession was held to be conclusive evidence of fraud. The case of Meggott v. Mills, 1 Lord Raym. 286, which was not referred to in Smith v. Henry, and which is quoted and commented on in Ryall v. Rolle and Worsely v. De Mattos, seems to me to illustrate this. In that case the landlord had advanced money to his tenant to buy furniture, and took a mortgage of the furniture to secure himself, the tenant retaining possession. As observed in both the cases mentioned, this was not decided upon any notion of a distinction between a mortgage and an absolute conveyance, but Lord Holt said that “if these goods of Wilson’s had been assigned to any other creditor, the keeping of the possession of them had made the bill of sale fraudulent as to the other creditors.” This cannot be on any such ground as that a landlord stands on a better footing than any other creditor; but must go on the principle of Smith v. Henry, that he who has advanced his money on the faith of the security of the mortgage, stands on a different footing from a creditor to whom the debtor’s goods are mortgaged to secure a previously existing debt. In the former case no injury is done to creditors. They are deprived of nothing which they would have had if the transaction had never taken place.
But when a conveyance is made to satisfy a debt created at the time, then, in the case of an absolute conveyance, the retaining of possession is not conclusive evidence of fraud, but one of the badges of fraud, susceptible of explanation. So it may be in the case of a mortgage; but there is then a difference in the application of the principle. When there is an absolute conveyance, it is in the natural course of things that the possession should be changed; and when this is not done, we are set upon *3981 l°°king for *some secret motive or understanding which has ° J induced this departure from the ordinary course. But it is not in the common course that possession should be transferred when a mortgage is executed. If there is'a stipulation that possession shall be retained till condition broken, it seems to me that it comes within the principle of Cadogan v. Kennet, Cowp. 432; Arundel v. Phipps, 10 Ves. ] 40, and that class of cases in which possession was held not to be fraudulent, because in pursuance of the terms of the deed. But if there be no such stipulation, still it is very different from the case of an absolute sale. It is the common understanding and practice of the country, that possession shall not be taken till condition broken. It is a conditional sale to provide for satisfying a debt, and in conscience and equity the party is not entitled to his satisfaction until the debt is due I should therefore say, that the mere circumstance of retaining possession until condition broken, is not of itself evidence of fraud. The possession is sufficiently explained.
And even after condition broken, it is still different from the case of an absolute sale. As I have said, in the latter case, it is the common course that possession should be transferred with the title, and the departure from the common course is to be accounted for. But it is not the common course that the mortgaged property should be seized the mo *253 ment the condition is broken. It may be harsh to do so. It may not be in the party’s power to find the property, or he may not be able to seize it without committing a trespass. Even some degree of neglect does not infer fraud. Still I think a great degree of neglect in leaving the property in the mortgagor’s possession after condition broken, may be a badge of fraud; though not so strong as in the case of an absolute sale. It is one among the circumstances to enable a Court or jury to judge of the character of the transaction.
In this case, there was but a very trifling degree of neglect, which may be further accounted for by the plaintiff’s having been aware that the slaves were liable to the older executions. It was argued that this mortgage was not given for a debt created at the time. The note, which is the evidence of the debt, was given at the same time, (a) We know nothing of the consideration of the *note, but it is not impeached. r*329 The only circumstance relied on to show that it was given for a L previously existing debt, is that it provides for the payment of interest from the previous first of January. But this is too slight to warrant the conclusion. A contract might have been entered into at that time, with a viéw to this security, which was not regarded as executed until the note and mortgage were given. There are many ways in which the circumstance may be accounted for. Whatever consideration was paid, may have gone to the use of creditors.
The motion is therefore dismissed and the decree affirmed.
Johnson, J., and O’Neall, J., concurred.

 From the brief (the only document the reporter had from which to make a report, not having the Chancellor’s decree,) it appears that the note was dated 21st May, 1832, and the mortgage the 19th June following. It.